IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Thomas C. Wilson, | ) | C/A No. 0:14-4006-TMC-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| T. Jacobs, *M.D.*; and Wienglass, *M.D.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff Thomas C. Wilson, a self-represented pretrial detainee, filed this action pursuant to 42 U.S.C. § 1983 alleging violation of his constitutional rights by the named defendants.[1] This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on the defendants' motion to dismiss or, in the alternative, for summary judgment. (ECF No. 80.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised Wilson of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the defendants' motion. (ECF No. 81.) Wilson filed a response in opposition (ECF No. 87, Additional Attachments, ECF No. 88), and the defendants replied (ECF No. 90).[2] Having carefully considered the parties' submissions and the applicable law, the court concludes that the defendants' motion for summary judgment should be granted.

---

[1] The court notes that Defendant Wienglass, M.D. is more properly identified as Barry Weissglass, M.D. (Weissglass Aff., ECF No. 80-4.)

[2] Wilson also filed a sur-reply. (ECF No. 95.) The court observes that the Local Rules make no provision for sur-replies. Further, under Local Civil Rule 7.07 (D.S.C.), "[r]eplies to responses are discouraged." However, even considering Wilson's sur-reply, it does not change the court's analysis of the legal issues and its recommendation to grant summary judgment.

Page 1 of 12



## BACKGROUND

The following facts are taken in the light most favorable to Wilson, to the extent they find support in the record. Wilson has an extensive medical history. Wilson states that he has suffered, and currently suffers from, a multitude of maladies, including congestive heart failure, uncontrolled atrial fibrillation, uncontrolled hypertension, multiple strokes, and type 2 diabetes. He also states that he needs to be on the heart transplant list and that, since 2008, he has had three pacemaker-type devices installed prior to the events in the instant Complaint. (ECF No. 34-2 at 6-7.)

Wilson alleges that the defendants, who are both doctors contracted to provide medical care to detainees at the detention center, have not provided him with proper care for his heart condition and other maladies. Wilson alleges that, in May 2014, he was extradited from the state of Connecticut and taken to South Carolina, where he was housed at the Sheriff Al Cannon Detention Center. (ECF No. 34-2 at 10.) A short time later, Wilson was taken to the Medical University of South Carolina ("MUSC") cardiac unit at which time an implantable cardiovertor-defibrillator ("ICD") was installed. (Id.) Wilson alleges that the implanted device is sub-standard and that the named defendants approved this device. (ECF No. 34-2 at 10-11.) Wilson was then returned to the detention center where he alleges he has since been under the care of the named defendants. Wilson specifically alleges that the defendants made improper changes to his prescribed medications, refused to consult with outside providers or facilities regarding his medical conditions, did not examine him for extended periods of time, did not perform specific laboratory tests on a frequent enough basis, made decisions contrary to discharge orders of MUSC, and falsified medical records. (See generally ECF Nos. 34, 34-1, & 34-2.) Wilson seeks injunctive relief in that he wants his ICD replaced with a device of his choice, and to receive procedures and be seen by doctors of his choice. (ECF No. 34-

2 at 22.) He also requests that both defendants be held liable for medical malpractice and indifference to Wilson's medical needs and seeks monetary relief in the amount of one million dollars.³ (ECF No. 34 at 3-4.)

## DISCUSSION

**A.  Applicable Standards**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) examines the legal sufficiency of the facts alleged on the face of the plaintiff's complaint. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). A claim is facially plausible when the factual content allows the court to reasonably infer that the defendant is liable for the misconduct alleged. Id. When considering a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint. Erickson v. Pardus, 551 U.S. 89, 94 (2007).

The court observes that it is required to liberally construe *pro se* complaints. Id. Such *pro se* complaints are held to a less stringent standard than those drafted by attorneys, id.; Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), and a federal district court is charged with liberally

---

³ To the extent Wilson attempts to raise additional claims in his response in opposition which were not presented in the Complaint, such claims are not properly before the court. See, e.g., Bridgeport Music, Inc. v. WM Music Corp., 508 F.3d 394, 400 (6th Cir. 2007) (holding that a party may not expand its claims to assert new theories in response to summary judgment); White v. Roche Biomedical Labs., Inc., 807 F.Supp. 1212, 1216 (D.S.C. 1992) (noting that "a party is generally not permitted to raise a new claim in response to a motion for summary judgment").



construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case. Hughes v. Rowe, 449 U.S. 5, 9 (1980); Cruz v. Beto, 405 U.S. 319 (1972). When a federal court is evaluating a *pro se* complaint, the plaintiff's factual allegations are assumed to be true. Erickson, 551 U.S. at 93 (citing Twombly, 550 U.S. 544, 555-56 (2007)). The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so; however, a district court may not rewrite a complaint to include claims that were never presented, Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999), construct the plaintiff's legal arguments for him, Small v. Endicott, 998 F.2d 411 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court, Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

Additionally, summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over



facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248. The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322.

**B.     Defendants' Motion for Summary Judgment**

   **1.     Deliberate Indifference to Medical Needs**

The standard for reviewing medical claims of pretrial detainees under the Fourteenth Amendment is essentially the same as that for a convicted prisoner under the Eighth Amendment—deliberate indifference to serious medical needs.[4] Hill v. Nicodemus, 979 F.2d 987, 991 (4th Cir. 1992); Martin v. Gentile, 849 F.2d 863, 871 (4th Cir. 1988) (citing Estelle v. Gamble, 429 U.S. 97 (1976)). To establish a claim under the Eighth Amendment, a detainee must show that: (1) a sufficiently serious deprivation occurred, resulting "in the denial of the minimal civilized measure of life's necessities," and (2) the prison official had a sufficiently culpable state of mind.

---

[4] The Supreme Court recently held that a pretrial detainee's claim of excessive force under the Fourteenth Amendment must meet an objective standard by showing "only that the force purposely or knowingly used against him was objectively unreasonable." Kingsley v. Hendrickson, 135 S. Ct. 2466 (2015). In contrast, a convicted prisoner claiming excessive force under the Eighth Amendment must meet a subjective standard in which the core judicial inquiry is "whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992) (citing Whitley v. Albers, 475 U.S. 312 (1986)). Because the decision in Kingsley addressed only claims of excessive force, this court continues to abide by precedent established by the United States Court of Appeals for the Fourth Circuit, which has set forth a subjective standard when addressing a pretrial detainee's claims of deliberate indifference to a serious medical need.



Farmer v. Brennan, 511 U.S. 825, 834 (1994). To satisfy the second prong, a detainee must show that the prison official's state of mind was "deliberate indifference" to the detainee's health and safety. Id. A prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to a detainee and disregards that substantial risk. Id. at 847; Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004). To be liable under this standard, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. However, because even a subjective standard may be proven through circumstantial evidence, "a prison official cannot hide behind an excuse that he was unaware of a risk, no matter how obvious." Makdessi v. Fields, 789 F.3d 126, 133 (4th Cir. 2015) (quoting Brice v. Va Beach Corr. Ctr., 58 F.3d 101, 105 (4th Cir. 1995)). Therefore, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that a risk was obvious." Makdessi, 789 F.3d at 133 (quoting Farmer, 511 U.S. at 842).

Not "every claim by a [detainee alleging] that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle, 429 U.S. at 105. To establish deliberate indifference, the treatment "must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). Mere negligence, malpractice, or incorrect diagnosis is not actionable under 42 U.S.C. § 1983. See Estelle, 429 U.S. at 106. While the Constitution requires a jail to provide detainees with medical care, it does not demand that a detainee receive the treatment of his choice. Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). "[A detainee's] mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." Nelson v. Shuffman, 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation



marks & citation omitted) (alterations in original); see also Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

Courts have recognized that "lay people are not qualified to determine . . . medical fitness, whether physical or mental; that is what independent medical experts are for." O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005); see also Nelson, 603 F.3d at 449 ("A [detainee's] disagreement as to the appropriate treatment fails to rise to the level of a constitutional claim and fails to create a genuine issue of material fact."); Dulany v. Carnahan, 132 F.3d 1234, 1240 (8th Cir. 1997) ("In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, [a detainee] cannot create a question of fact by merely stating that she did not feel she received adequate treatment."); Fleming v. Lefevere, 423 F. Supp. 2d 1064, 1070 (C.D. Cal. 2006) ("Plaintiff's own opinion as to the appropriate course of care does not create a triable issue of fact because he has not shown that he has any medical training or expertise upon which to base such an opinion.").

Wilson has failed to provide evidence from which a reasonable jury could find deliberate indifference to his medical needs. As stated above, Wilson appears to allege that the defendants did not provide him with proper care for his heart condition and other maladies. In support of their motion, the defendants have provided the affidavits of both Defendants Jacobs and Weissglass (Jacobs Aff., ECF No. 80-3; Weissglass Aff., ECF No. 80-4), as well as a representative sample of Wilson's health records outlining the times Wilson was examined by medical staff and the treatment provided.[5]  (Med. Rec., ECF Nos. 80-6 through 80-15.)

---

[5] The defendants note that Wilson's complete medical records exceed 800 pages, and that they therefore have provided the court with excerpts of these records in support of their motion for summary judgment. Wilson appears to take issue that the defendants did not provide a complete



Dr. Jacobs avers that he is employed as a physician by the Carolina Center for Occupational Health ("CCOH") as the Medical Supervisor for CCOH at the Sheriff Al Cannon Detention Center infirmary, and that Wilson is his patient. (Jacobs Aff. ¶¶ 1, 3, ECF No. 80-3 at 1.) As sworn to by Dr. Jacobs, Wilson arrived at the detention center on April 22, 2014 and was medically screened by a CCOH medical staff member. (Id. ¶ 4, ECF No. 80-3 at 2.) At the time of his arrival, Wilson reported a recent hospitalization and pacemaker infection, cardiovascular disease since January 2008, a history of stroke in November 2013, a history of diabetes, a history of hypertension, and a history of gastro intestinal bleeding. (Id.) Jacobs avers that Wilson's medications at the time of his arrival were well-documented, and that based upon Wilson's reported medical conditions, Wilson was "referred to the Chronic Care Clinic at the detention center and housed in the medical infirmary where he could receive round-the-clock medical assessment and attention, if needed." (Id.)

Jacobs further avers that, two days after Wilson's arrival on April 24, 2014, Wilson reported chest pain and was sent to the emergency room at the Medical University of South Carolina ("MUSC") for further evaluation. (Id. at ¶ 5.) Until Wilson's discharge from MUSC on May 3, 2014, during which time Wilson received an implantable cardiovertor-defibrillator device, Jacobs swears that he was not consulted or involved in the choice of device or its placement procedure. (Id. at ¶ 6.) Jacobs avers that, once Wilson was re-admitted to the detention center infirmary, Wilson was routinely monitored by Jacobs and other members of the CCOH medical staff over the course

---

copy of his medical records to the court. However, the defendants note that they provided Wilson with a complete copy of his medical records. (Defs.' Resp. Opp'n Summ. J., ECF No. 80-1 at 3 & n.2.) Accordingly, Wilson had the opportunity to provide the court with any of these records in support of his response in opposition. To the extent Wilson alleges that the records that were produced to him were incomplete, the court has previously addressed motions to compel filed by Wilson in its August 3, 2015 Order. (ECF No. 92.)



of 2014 until the present, and that this care included ordering laboratory and other testing, consistently checking Wilson's blood pressure, and adjusting Wilson's medications as necessary. (Id. at ¶ 7.) Jacobs further avers that, in addition to his treatment at the detention center infirmary, Wilson has also been seen by MUSC physicians on emergent bases as well as for routine follow-up care, most recently in May 2015. (Id. at ¶ 9, ECF No. 80-3 at 3.)

Dr. Barry Weissglass also provides affidavit testimony in which he avers that he is the Medical Director at CCOH, and that CCOH medical staff, including Dr. Jacobs and himself, have monitored Wilson every day that Wilson has been at the detention center. (Weissglass Aff. ¶¶ 3, 8, ECF No. 80-4 at 1-2.) Wesissglass further avers that Wilson lives in the infirmary where he can receive immediate, twenty-four hour care as needed, and that Wilson continues to receive medications for his various medical issues. (Id. ¶ 8, ECF No. 80-4 at 2.)

Wilson's claims center on his allegation that the defendants were deliberately indifferent to his medical needs in that their methods or treatment decisions with regard to his care were reckless. Specifically, Wilson alleges that the defendants made improper changes to his prescribed medications, refused to consult with outside providers or facilities regarding his medical conditions, did not examine him for extended periods of time, did not perform specific laboratory tests on a frequent enough basis, made decisions contrary to discharge orders of MUSC, and falsified medical records. (See, e.g., 2d Suppl. Compl., ECF No. 34 at 1-3, 6, ECF No. 34-2 at 11-13.) In support of his allegations, and in an apparent effort to show that the defendants did not properly treat his medical issues, Wilson includes selected medical records which he has annotated, as well a multitude of created exhibits of self-recorded medical charts that Wilson tracked himself without his doctors' knowledge. Importantly, the majority of Wilson's complaints appear to be that he did not receive



the care of his choice or that he believes the defendants to be "incompetent" in that they did not medically treat him in the way Wilson believes to be proper.

The indisputable record shows that Wilson had access to medical care on a continuous basis, received multiple medications on a daily basis, was routinely tested and monitored, and received additional emergency care when warranted. The record before the court is also clear that Wilson, who was fifty-nine years old on the date he arrived at the detention center, had many preexisting conditions of a concerning nature, and that these conditions were acknowledged and treated either by the named defendants, by the staff of CCOH, or through outside care providers. Wilson adamantly argues that his care should have been different and specifically details what those differences should have been. However, he offers no medical expert evidence to support his beliefs. As stated above, a prisoner's disagreement unsupported by any expert testimony as to the appropriate treatment fails to rise to the level of a constitutional claim and fails to create a genuine issue of material fact. See Jackson, 846 F.2d at 817; Nelson, 603 F.3d at 449; see also O'Connor, 426 F.3d at 202; Dulany, 132 F.3d at 1240; Fleming, 423 F. Supp. 2d at 1070. At most, Wilson's claims allege negligence or medical malpractice, which is not actionable under § 1983.[6] See Daniels v.

---

[6] To the extent that Wilson is seeking to raise state law claims of negligence or medical malpractice against the defendants, South Carolina law requires a plaintiff to file an affidavit of an expert witness with his complaint when asserting a claim of professional negligence against a professional licensed or registered with the State of South Carolina. S.C. Code Ann. § 15-36-100(B); Martasin v. Hilton Head Health Sys. L.P., 613 S.E.2d 795, 799 (S.C. Ct. App. 2005); Jernigan v. King, 440 S.E.2d 379, 381 (S.C. Ct. App. 1993). It is undisputed that Wilson has failed to file an expert affidavit with his Complaint, and therefore he cannot proceed with a state law claim of negligence or medical malpractice against the defendants. See also Millmine v. Harris, C/A No. 3:10-1595-CMC, 2011 WL 317643 (D.S.C. Jan. 31, 2011) (holding that, in considering a state law claim for medical malpractice under this court's supplemental jurisdiction, the pre-suit notice and expert affidavit requirements in S.C. Code Ann. §§ 15-36-100 and 15-79-125 are the substantive law in South Carolina).



Williams, 474 U.S. 327, 328-36 & n.3 (1986); Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) ("The district court properly held that Daniels bars an action under § 1983 for negligent conduct."); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir. 1987); see also Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Accordingly, based on the record presented in this case, no reasonable jury could find that the defendants were deliberately indifferent to Wilson's medical needs.

### 2.     Other Claims

To the extent that Wilson's Complaint may be construed to allege any other constitutional violations, the court finds that Wilson has failed to plead sufficient facts to state a plausible claim. See Ashcroft v. Iqbal, 556 U.S. 662, 667-68 (2009).

### RECOMMENDATION

Accordingly, the court recommends that the defendants' motion be granted. (ECF No. 80.)

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

January 22, 2016
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).